UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEMPLE BAPTIST CHURCH, a Michigan
ecclesiastical corporation,

     Plaintiff,

vs.

CHARTER TOWNSHIP OF PLYMOUTH, a
Michigan municipal corporation, and the
PLYMOUTH TOWNSHIP PLANNING
COMMISSION,

     Defendants.

Case No. 94-CV-74045-DT

Hon. George Woods

                           /

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
By:    JOSEPH F. GALVIN (P-13821)
        ANNE H. HIEMSTRA (P-26739)
Attorneys for Plaintiff
150 W. Jefferson Street, Suite 2500
Detroit, Michigan 48226
(313) 963-6420

HEMMING, POLACZYK AND CRONIN, P.C.
By:    TIMOTHY L. CRONIN (P-26417)
Attorneys for Defendants
217 W. Ann Arbor Road, Suite 302
Plymouth, Michigan 48170
(313) 453-7877

JOHNSON, ROSATI, GALICA, SHIFMAN,
LaBARGE, ASELTYNE, SUGAMELI & FIELD, P.C.
By:    CAROL A. ROSATI (P-32288)
34405 W. Twelve Mile Road, Suite 200
Farmington Hills, Michigan 48331-5627
(810) 489-4100
Co-Counsel for Defendants

                           /

**CONSENT JUDGMENT**

## CONSENT JUDGMENT

At a session of said Court, held in the City
of Detroit, County of Wayne, State of Michigan
on _____

Present: Hon. _____ OCT 27 1995
United States District Court Judge

Upon stipulation and consent of the parties, by and through their respective attorneys, this Court finds:

1.  Plaintiff, Temple Baptist Church, a Michigan ecclesiastical corporation ("Church"), is the owner of a parcel of land ("Property") containing approximately 55.8 acres and located at the southwest corner of North Territorial Road and Ridge Road in Plymouth Township. The Property is more particularly described in Exhibit "A" attached hereto and made a part hereof.

2.  Defendant, Charter Township of Plymouth ("Township") is a municipal corporation, organized and existing under Act 359, PA 1947, as amended, MCL 42.1, et seq., located in Wayne County, Michigan.

3.  Defendant, Plymouth Township Planning Commission ("Planning Commission"), is a commission established pursuant to Act 184, PA 1943, as amended, MCL 125.271 ("Zoning Act").

4.  Pursuant to the Zoning Act, the Township has duly adopted Ordinance No. 83, a zoning ordinance which has been amended from time to time ("Zoning Ordinance").

5.  The Property is vacant land formerly used as a farm. Under the Zoning Ordinance, it is zoned AG, Agricultural District. Surrounding land uses are:

-   On the west, the Property is bounded by the M-14 Expressway.

- On the north, the Property is bounded by North Territorial Road. On the north side of North Territorial Road is land zoned R-2-A, Multiple Family Residential, which is currently being developed as Plymouth Pointe condominiums.

- On the east, the Property is bounded by Ridge Road. On the East Side of Ridge Road, are single family homes on small acreage parcels. One such parcel has received rezoning, site plan and cluster housing approval from the Township.

- On the south, the Property is bounded by Plymouth Commons Subdivision #2 and by land owned and used for church purposes by the Church of Jesus Christ of Latter Day Saints.

6.     In the vicinity of the Property, North Territorial is a two-lane paved road and Ridge Road is a two-lane gravel road. A special assessment district to finance the paving of Ridge Road in this area is currently under consideration by the Township.

7.     The Zoning Ordinance permits churches and private recreation uses to be located in the AG, Agricultural District, as Uses Subject to Special Conditions ("special land uses"), provided that the general criteria contained in Section 2.7(1) of the Zoning Ordinance are satisfied and, as to private recreation uses, the special criteria listed in Section 5.2(2) of the Zoning Ordinance are also satisfied.

8.     On or about April 4, 1994, the Church filed applications with the Township seeking special land use approval to construct and use the Property for a church, private recreation uses, and accessory uses.

9.     The Planning Commission held a public hearing on the Church's applications on May 18, 1994, and received additional information on and/or considered the applications at meetings on June 1, June 15, July 6, July 20, August 3, and August 17, 1994. The Church provided information about the various ministries and programs of the Church and the proposed ministries and programs to be conducted at the proposed building on the Property.

10.     At its meeting on August 17, 1994, the Planning Commission denied the Church's applications for a church and private recreation uses on the Property.

11.     On or about September 7, 1994, the Church commenced this lawsuit seeking a writ of superintending control and other relief.

12.     The parties now wish to settle this lawsuit in accordance with the terms and conditions of this Consent Judgment, in order to avoid further costs and expenses and the uncertainty of a trial and to resolve this dispute without any admission of liability.

13.     The parties agree that the operative provisions of this Consent Judgment are promises made by each of them to the extent that these provisions are applicable to their respective actions.

NOW, THEREFORE, this Consent Judgment being presented to the Court pursuant to stipulation of the parties, and the Court having determined that this proposed Consent Judgment is reasonable and just and being otherwise fully advised in the premises, IT IS HEREBY ORDERED THAT:

## Section 1 - Approvals

1.1     Special Land Use Approval. The Church is hereby granted a Use Subject to Special Conditions, pursuant to Sections 2.7 and 5.2 of the Zoning Ordinance, to construct, maintain, and use a church, private recreation areas, and related uses on the Property in accordance with the terms of this Consent Judgment and the Approved Plans.

1.2     Plan Approval.

(a)     The plans and specifications (collectively "Approved Plans") attached hereto as Exhibit B and made a part of this Consent Judgment are granted final site plan

approval under Article 24 of the Zoning Ordinance. The Approved Plans consist of:

| | |
|---|---|
| SP101 - | Legal Description and Existing Conditions |
| SP102 - | Phase I Site Plan |
| SP103 - | Master Site Plan for Church Campus |
| SP104 - | Engineering Plans - Phase I |
| SP105 - | Landscaping Plan - Phase I |
| SP106 - | Site Lighting Plan - Phase I |
| SP107 & | |
| SP108 - | Floor Plans - Phase I |
| SP109 & | |
| SP110 - | Exterior Building Elevations - Phase I |
| SP111- | Site and Building Data |
| SP112 - | Sign Plans |
| SP113 - | Bell Tower Design Drawing |

In the event completed Plans are not available at the time this Consent Judgment is entered, the Township will review the Plans submitted by the Church within a reasonable time and will approve such Plans so long as they conform to the requirements of this Consent Judgment and are in accordance with Section 1.5 below. After the Plans have been completed and approved, they will be attached hereto as part of Exhibit B and will be deemed to be part of the Approved Plans.

(b)     Except as otherwise provided in this Consent Judgment, no further review or approval by the Township will be required as to any matters covered by the Approved Plans and/or this Consent Judgment.

1.3     Building and Other Permits for Phase I. The Township will issue building permits and all other permits necessary to enable the Church to construct the improvements shown on the Phase I Site Plan in accordance with the Approved Plans. The construction contemplated in Phase I can begin immediately after approval of the Plans and issuance of all necessary permits.

1.4     Approvals and Permits for Phases II and III and Additional Parking. The development of Phases II and III, and the additional parking described in Section 2.2, shall be subject to the following:

(a)     Upon submission by the Church of site plans and engineering plans for Phase II and/or Phase III of the Church Campus ("Future Plans") and payment of the Township's generally applicable fees for reviewing such Plans, the Township will review the Future Plans within a reasonable time and will approve such Future Plans so long as they conform to the requirements of this Consent Judgment and the Master Site Plan and are in accordance with Section 1.5 below. After the Future Plans are approved, they shall be deemed to be part of the Approved Plans for purposes of this Consent Judgment. No additional approval of Uses Subject to Special Conditions or other special land use approval or permit shall be required for Phase II or Phase III or for any of the additional improvements described in Section 2.4 below.

(b)     The construction on Phase II or III may begin after receiving the approvals required by Section 1.2 and Section 1.4(a) above, but no construction of Phase II or III, or the additional parking described in Section 2.2, may commence before five (5) years from the date of entry of this Consent Judgment. The Township may agree to shorten this five (5) year period upon application by the Church for earlier construction of Phase II or III, or the additional parking, and a review by the Township of the potential impact of the proposed expansion.

1.5     Applicable Laws.

(a)     Irrespective of the zoning designation of the Property, it may be used in

-6-

accordance with the terms of this Consent Judgment, and the Property and the structures thereon may continue to be used in perpetuity as a church and in accordance with the terms of this Consent Judgment.

(b)     No amendments to or modifications of the text or map of the Zoning Ordinance or any applicable regulatory ordinances made or adopted after the date hereof:

(i)     shall prevent the Property from being used in accordance with the terms of this Consent Judgment; or

(ii)    shall prevent the construction of any structures or other improvements shown in Exhibit B and in accordance with this Consent Judgment.

Specifically, but without limiting the generality of this Section 1.5, the Property and the structures thereon shall not be subject to any provision of the Zoning Ordinance or regulatory ordinances which would (except for this Consent Judgment) prevent future use of the Property and structures as a church because of any interruption in such use or because of a change in tenancy, ownership, or management of the Property and structures; or prevent the repair, refurbishing, reconstruction, rebuilding or restoration of any structure(s).

(c)     In reviewing the Plans (if not already approved as of the date hereof) and any applications for permits for the construction or use of any building or other improvements covered in the Plans for Phase I as shown on the Master Site Plan, the Township shall apply and consider only the requirements of the Zoning Ordinance, regulatory ordinances, and engineering standards which are in effect and applicable as of the date hereof.

(d)     In reviewing the Plans for Phases II and/or III, the Township shall apply and consider the engineering standards and applicable BOCA or construction standards in

effect at the time of review of the Future Plans.

(e)   Although the Property is currently zoned AG, Agricultural District, under the Zoning Ordinance, the Church agrees that the Township may, upon its own initiative, rezone the Property to R-1-E or R-1-H, single-family residential.

(f)   In the event of conflict between the terms of this Consent Judgment and terms contained in the Township's Ordinances, the terms of this Consent Judgment shall control.

### Section 2 - Conditions

2.1   Applicability. The conditions listed in this Section 2 shall apply to the approval of the Uses Subject to Special Conditions and to the Approved Plans. In the event of conflict between the Approved Plans and this Consent Judgment, the terms of this Consent Judgment shall control.

2.2   Church Campus. The Church Campus shall consist of the following phases:

| Phase I | - | Worship Center, which includes an auditorium containing not more than 2,500 seats; a parking area containing 845 parking spaces; driveways, sidewalks, and all related improvements shown on the Phase I Site Plan. |
| Phase II | - | Christian Education Building with Atrium Lobby (provided however that the Atrium Lobby may be constructed as part of either Phase II or Phase III). |
| Phase III | - | Recreation Building. |
| Additional Parking | - | Sufficient to cause the total number of parking spaces on the Property not to exceed 1,167. |

Notwithstanding the foregoing, (a) the Church may elect to construct Phase III before constructing Phase II, and (b) the Additional Parking Spaces shall be constructed prior to or

must be completed at the same time as the expansion of the auditorium from 2,500 seats to 3,500 seats, as provided in Section 2.3 below.

      2.3    Size of Buildings. The buildings constructed in each Phase shall not exceed the square footages set forth below:

| Building | Footprint | Floor Area |
|---|---|---|
| Worship Center | 60,000 φ | 90,000 φ |
| Christian Education | 50,000 φ | 100,000 φ |
| Recreation Building | 40,000 φ | 45,000 φ |

In addition, the Atrium Lobby, which consists of a covered courtyard connecting the different Phases of the Church Campus and which may be constructed as part of either Phase II or Phase III, shall not exceed a footprint of 30,000φ or a floor area of 30,000φ. The maximum seating capacity of the auditorium in the Worship Center shall be 3,500 seats, provided however that the Worship Center auditorium as constructed in Phase I shall not exceed 2,500 seats, and that the remaining 1,000 seats shall not be used until construction of Additional Parking has been completed.

      2.4    Additional Improvements.    In addition to the buildings and related improvements described above, the Church shall have the right to construct one or more of the additional improvements described in this paragraph. Each of these additional improvements may, at the Church's sole option, be constructed as part of any Phase or as a separate project. Upon receipt of the Township's generally applicable fees, the Township will review and approve any plans within a reasonable time and issue any permits necessary for the construction of such improvements so long as such plans are consistent with the terms of this

Consent Judgment. Each plan when approved will become part of the Approved Plans. The permitted additional improvements are:

    (a)    Two baseball fields, in the location indicated on the Master Site Plan.

    (b)    Picnic area, in the location indicated on the Master Site Plan.

    (c)    A utility shed, as shown on the Master Site Plan and Phase I Site Plan, of not more than 1,000φ.

    (d)    Signs in accordance with the sign plan attached hereto as SP112.

    (e)    A tower ("Bell Tower") in substantially the design and appearance shown in SP113 attached hereto and located in the area designated as "Tower Area" on the Master Site Plan. The height of the Tower shall be (i) to top of spire: not more than 35 feet above the highest point of the roof of the Worship Center; and (ii) to top of cross: not more than 45 feet above the highest point of the roof of the Worship Center.

2.5    Musical Service Events/Concurrent Events.

    (a)    A "Musical Service Event" is a special event held on the Church Campus which is religious in nature and an integral part of the worship mechanism for the Church but which may include entertainment value. Each Musical Service Event held during a twenty-four hour period shall be considered a separate Event for purposes of Section 2.5(b) below. Musical Service Events do not include regularly scheduled worship services or Christmas and Easter special music programs; however, Christmas and Easter special music programs are subject to the limitations described in subsection (g) below.

    (b)    The number of Musical Service Events held on the Church Campus each

year shall not be more than fourteen (14).

(c)     Musical Service Events held Sunday through Thursday shall be scheduled to begin not earlier than 7:00 P.M. and to end not later than 9:30 P.M.. Musical Service Events held on Friday or Saturday shall be scheduled to begin not earlier than 7:00 P.M. and to end not later than 11:00 P.M..

(d)     Parking lot lighting shall be shut off within one (1) hour after the end of a Musical Service Event, provided however that a limited amount of security lighting may be continued from dusk to dawn.

(e)     No other event may be conducted on the Church Campus concurrently with a Musical Service Event, which would cause the aggregate number of attenders at the Musical Service Event and the concurrent event to total more than (i) 2,500, so long as the seating capacity of the auditorium in the Worship Center remains at 2,500; or (ii) 3,500, at such time as the seating capacity of the auditorium in the Worship Center is enlarged to 3,500. "Attenders" as used in this paragraph shall not include musicians or support personnel (e.g., ushers and parking lot attendants). The Church will cooperate with the Township by providing attendance information for Musical Service Events upon request from the Township.

(f)     This Section 2.5 shall not be construed to limit the number and/or size of services or activities, other than Musical Service Events, which may be held on the Church Campus, or to prohibit concurrent services or activities, provided, however, (i) so long as the seating capacity of the auditorium in the Worship Center remains at 2,500, the total number of attenders at services or activities held concurrently on the Church Campus shall not exceed 2,500; and (ii) at such time as the seating capacity of the auditorium in the Worship Center is

-11-

enlarged to 3,500, the total number of attenders at services or activities held concurrently on the Church campus shall not exceed 3,500. "Attenders" as used in this paragraph shall not include musicians or support personnel (e.g., ushers and parking lot attendants). Provisions (i) and (ii) of this subsection (f) shall not apply to Musical Service Events, which shall be governed by Section 2.5(e) above.

    (g)    Christmas and Easter special music programs shall be considered ancillary and typical to the Church use. Therefore, Christmas and Easter special music programs shall not be considered Musical Service Events and shall not be included in the foregoing computations, but shall be subject to the following limitations:

    (i)    Christmas special music programs may be held only on the four weekends (i.e., Friday, Saturday, and Sunday) immediately preceding Christmas Day (but not including the Christmas holiday weekend).

    (ii)    Easter special music programs may be held only on three of the four weekends (i.e., Friday, Saturday and Sunday) immediately preceding and including the weekend of Easter Sunday.

    (iii)    Only one special music program shall be held on each of the permitted days set forth in subparagraphs (i) and (ii) above.

    (iv)    Each Christmas and Easter special music program shall have a maximum capacity equal to that of the Worship Center at the time of the event.

2.6     Parking Areas:

(a)     Parking shall only be permitted to occur within the parking spaces designated on the Site Plan for Worship Center. No parking shall occur on the lawn, in driveways or approaches, or along Ridge Road or North Territorial Road. The Church shall cooperate with the Township's Police Chief to complete any regulations or contract necessary to permit enforcement of this restriction by the Township Police Department.

(b)     The dimensions of standard (i.e., non-barrier free) spaces shall be nine (9) feet by twenty (20) feet with twenty-two (22) foot aisle.

(c)     The number and dimensions of barrier free spaces shall comply with applicable federal, state and township laws and ordinances.

(d)     Parking lot lighting shall be of a hidden source, cut off type, as indicated on Exhibit SP106. The maximum height for parking lot light standards shall be thirty (30) feet.

(e)     Parking lot lighting shall be shut off within one (1) hour after the end of activities on the Church Campus, provided however that a limited amount of outdoor security lighting may be continued from dusk to dawn.

2.7     Traffic Control.

(a)     Subject to receiving approval from governmental agencies having jurisdiction, the Church shall, at no cost to the Township, install or cause to be installed a traffic signal light at the intersection of North Territorial Road and Ridge Road. The Church shall coordinate with all agencies having jurisdiction for installing and maintaining such signal, but the Church shall have no obligation to maintain, repair, or replace the signal after installation.

(b)   Only one vehicular entrance/exit to the Property shall be permitted along Ridge Road, in substantially the location shown on the Master Site Plan and Phase I Site Plan, and no other vehicular access between Ridge Road and the Property shall be permitted.

(c)   Vehicular exit onto Ridge Road from the Property (at the one entrance/exit permitted under this Consent Judgment) shall be restricted to left turns only. The Church shall cause the appropriate sign to be posted at this exit, and shall cooperate with the Township's Police Chief to complete any regulations or contract necessary to permit enforcement of this restriction by the Township Police Department.

(d)   The Church will provide tapers, acceleration lanes, deceleration lanes and other traffic control features as may legally be required by Wayne County Division of Public Service.

(e)   The Church shall participate in the proposed special assessment district for the paving of Powell and Ridge Roads as proposed. The Church has agreed to pay 8.67% (45 units out of 519 units) of the special assessment so long as the total amount levied in the special assessment district does not substantially exceed the currently projected amount of $1,166,639.00.

(f)   The Church will consult with the Township's Police Chief concerning traffic control and will cooperate in the use of Certified Safety Officers or other qualified persons for additional traffic control to the extent necessary.

2.8   Outdoor Uses and Restrictions.

(a)   No lighting will be permitted on the baseball fields.

(b)   Only the following outdoor areas or activities shall be permitted: picnic

-14-

area and meditation run area (as indicated on the Master Site Plan), baseball fields, fishing, outdoor running, and Easter Sunday sunrise service, or as otherwise permitted by Township ordinance.

2.9    Reforestation Area. The Church shall develop and maintain a Reforestation Area in the location indicated on the Master Site Plan and the Phase I Site Plan. The initial planting shall consist of two rows of six (6) foot evergreens located within the Reforestation Area along the south side of the Property, the type and location being particularly described in the landscaping plan attached hereto as Exhibit B-SP105. This initial planting shall be completed by December 1, 1996; if it is not completed by that date, the Church shall provide to the Township a cash bond or irrevocable letter of credit to guarantee installation of the initial planting within six (6) months. The installation of the remainder of the seedling plantings shall be completed not later than two (2) years from the date of issuance of a temporary or final certificate of occupancy. No improvements shall be constructed or located in the Reforestation Area other than a meditation run, which may be developed at any time after completion of the initial planting, in substantially the location shown on the Master Site Plan and in accordance with the specifications described in Exhibit B-SP105. The Church shall be responsible to maintain this Area and to replace, as necessary, dead or diseased evergreens that would impact the intent of the reforestation program.

2.10    Use Restriction. No portion of the Property or the Church Campus shall be used as a soup kitchen or to provide housing on a temporary or permanent basis, provided however that this provision is not intended to and does not prohibit (a) collection of food and/or clothing on the Property for delivery to and distribution from another site or (b) a

"sleep over" or retreat in a Church building by a youth group which is affiliated with and part of the ministry of the Church.

## Section 3 - Mutual Release

The Church and the Township, each for itself and its respective successors and assigns, releases and forever discharges the other and its respective affiliates, successors, predecessors, assigns, officers, directors, trustees, transferees, employees, independent contractors, and attorneys of and from any and all claims, demands, actions, causes of action, suits, debts, judgments, executions, damages and rights of whatever nature in law, equity or otherwise which now exist or which may subsequently accrue by reason of any acts, events or facts existing on the date of this Consent Judgment, whether known or unknown on that date, including by way of illustration but without limitation any matter arising out of or relating to the Lawsuit, the Church's application for approval of Uses Subject to Special Conditions, and/or any claims or causes of action arising under the Federal and State Constitutions or any federal or state statutes, rules or regulations. This Mutual Release shall not bar claims brought to enforce, interpret or otherwise obtain legal or equitable relief under or pursuant to this Consent Judgment. In the event of a proceeding to enforce this Consent Judgment, either party may seek to recover costs and attorney fees in addition to any other applicable and available relief.

## Section 4 - Additional Provisions

4.1    The parties and their respective successors and assigns shall treat and cooperate with one another in good faith and shall neither take any action which is contrary to or interferes with the spirit of this Consent Judgment, nor omit any action which is necessary or

convenient to or consistent with the spirit and intent of this Consent Judgment.

4.2     The parties shall execute any and all documents and/or enter into such agreements as are necessary or convenient to carry out the intent of this Consent Judgment.

4.3     This Consent Judgment is declared to be in recordable form, and the covenants contained herein are declared to be covenants running with this Property and all portions or divisions thereof, and the Wayne County Register of Deeds be, and hereby is, ordered to record a true copy of this Consent Judgment in the land records of Wayne County.

4.4     The terms of this Consent Judgment may be amended, changed or modified but only by written agreement executed by the parties hereto and approved and ordered by this Court.

4.5     By their execution of this Consent Judgment, the Church and the Township each warrant that they have the authority to execute this Judgment and bind their respective entities to its terms and conditions. This Consent Judgment shall in perpetuity be binding upon and inure to the benefit of the Church and the Township and their respective successors and assigns, including without limitation successors in interest in the Property and subsequent purchasers of the Property.

4.6     Except as provided by this Consent Judgment, all claims asserted in this lawsuit, including all claims for money damages, attorney fees and costs, are merged into this Judgment and forever barred.

4.7     This Court retains jurisdiction to assure compliance with the terms of this Consent Judgment and to grant whatever legal and/or equitable relief or remedies which the

Court deems appropriate.

_____
U.S. DISTRICT COURT JUDGE
ACTING IN THE ABSENCE OF JUDGE WOODS

TEMPLE BAPTIST CHURCH

By: Mark D. DeMoss
Its: Treasurer and Director
of Operations

_____
JOSEPH F. GALVIN (P-13821)
Attorney for Plaintiff

CHARTER TOWNSHIP OF PLYMOUTH

By: Kathleen Keen-McCarthy
Its: Supervisor

_____
TIMOTHY L. CRONIN (P-26417)
Attorney for Defendants

_____
CAROL A. ROSATI (P-32288)
Co-Counsel for Defendants

-18-

EXHIBIT A

## EXHIBIT A

### LEGAL DESCRIPTION

PART OF THE NORTHEAST 1/4 OF SECTION 30, TOWN 1 SOUTH, RANGE 8 EAST, PLYMOUTH TOWNSHIP, WAYNE COUNTY, MICHIGAN, DESCRIBED AS BEGINNING AT A POINT ON THE EAST AND WEST 1/4 LINE OF SECTION 30 DISTANCE SOUTH 86°54'57" WEST 60.01 FEET FROM THE EAST 1/4 CORNER OF SECTION 30, TOWN 1 SOUTH, RANGE 8 EAST, AND PROCEEDING THENCE ALONG THE EAST AND WEST 1/4 LINE OF SECTION 30, SOUTH 86°54'57" WEST 2334.21 FEET; THENCE ALONG THE EASTERLY LINE OF THE M-14 EXPRESSWAY, ON A CURVE CONCAVE TO THE NORTHWEST, RADIUS 5879.58, CENTRAL ANGLE 10°30'15", CHORD BEARS NORTH 38°10'07" EAST 1076.41 FEET, AN ARC DISTANCE OF 1077.92 FEET; THENCE CONTINUING ALONG THE EASTERLY LINE OF THE M-14 EXPRESSWAY, NORTH 32°54'59" EAST 667.25 FEET; THENCE ALONG A LINE 100 FEET SOUTH OF AND PARALLEL TO THE CENTERLINE OF NORTH TERRITORIAL ROAD, NORTH 84°02'29" EAST 695.37 FEET; THENCE NORTH 05°57'31" WEST 40.00 FEET; THENCE ALONG A LINE 60 FEET SOUTH OF AND PARALLEL TO THE CENTERLINE OF NORTH TERRITORIAL ROAD, NORTH 84°02'29" EAST 562.69 FEET; THENCE ALONG THE WEST LINE OF RIDGE ROAD, SOUTH 02°12'26" EAST 1452.28 FEET TO THE POINT OF BEGINNING, CONTAINING 55.8063 ACRES, SUBJECT TO EASEMENTS AND RESTRICTIONS OF RECORD.

EXHIBIT B

*THE PLANS TO BE ATTACHED HERETO AS*
*EXHIBIT B ARE BEING REVIEWED FOR*
*APPROVAL BY PLYMOUTH TOWNSHIP AND*
*WILL BE DELIVERED TO THE COURT AFTER*
*THAT APPROVAL.*